IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

ALONZO DEON JOHNSON,

        Petitioner,               No. CIV S-03-2063 RBB JFM P

    vs.

CLAUDE E. FINN, Warden,

        Respondent.

_____/

DARRYL L. THOMPSON,

        Petitioner,               No. CIV S-04-2208 RBB JFM P

    vs.

TOM L. CAREY, Warden,

        Respondent.           ORDER SETTING EVIDENTIARY HEARING

_____/

        Petitioners are state prisoners proceeding through counsel with an application for a writ of habeas corpus pursuant to 28 U.S.C. § 2254.  Each petitioner challenges his 2000 conviction.  Petitioners claim that their convictions must be reversed because the prosecutor exercised peremptory challenges to strike jurors on the basis of race, in violation of Batson v. Kentucky, 476 U.S. 79 (1986), and the Fourteenth Amendment Equal Protection Clause. Petitioners seek an evidentiary hearing; respondent opposes.

        Purposeful discrimination on the basis of race or gender in the exercise of peremptory challenges violates the Equal Protection Clause of the United States Constitution.

1  See Batson v. Kentucky, 476 U.S. 79 (1986); Johnson v. California, 545 U.S. 162 (2005).  So-

2  called Batson claims are evaluated pursuant to a three-step test:

> 3  "First, the defendant must make out a prima facie case 'by showing
> that the totality of the relevant facts gives rise to an inference of
> 4  discriminatory purpose.' [Citations]. Second, once the defendant
> has made out a prima facie case, the 'burden shifts to the State to
> 5  explain adequately the racial exclusion' by offering permissible
> race-neutral justifications for the strikes. [Citations .] Third, '[i]f a
> 6  race-neutral explanation is tendered, the trial court must then
> decide . . . whether the opponent of the strike has proved
> 7  purposeful racial discrimination.' [Citation.]"

8  Johnson, 545 U.S. at 168 (footnote omitted); Tolbert v. Page, 190 F.3d 985, 987-88 (9th Cir.

9  1999) (en banc).

10  In the instant action, the California Court of Appeal employed the incorrect legal

11  standards in determining whether petitioner had established a prima facie case and in failing to

12  conduct a comparative analysis of the seated jurors with the excused jurors.  Accordingly, this

13  court will examine petitioner's Batson claim de novo.  Paulino, 371 F.3d at 1090 (federal court of

14  appeals examined Batson claim de novo because the state court used the wrong legal standard

15  when analyzing whether defendant made a prima facie showing of bias); Wade v. Terhune, 202

16  F.3d 1190, 1195 (9th Cir. 2000) (holding that when the state court uses the wrong legal standard,

17  the rule of deference required by 28 U.S.C. § 2254(d)(1) does not apply).

18  In order to establish a prima facie case of racial discrimination, petitioner must

19  show that "(1) the prospective juror is a member of a "cognizable racial group," (2) the

20  prosecutor used a peremptory strike to remove the juror, and (3) the totality of the circumstances

21  raises an inference that the strike was motived by race."  Boyd, 467 F.3d at 1143 (citing Batson,

22  476 U.S. at 96 and Cooperwood v. Cambra, 245 F.3d 1042, 1045-46 (9th Cir. 2001)).  A prima

23  facie case of discrimination "can be made out by offering a wide variety of evidence, so long as

24  the sum of the proffered facts 'gives rise to an inference of discriminatory purpose.'"  Johnson,

25  545 U.S. at 168 (quoting Batson, 476 U.S. at 93-94.)  "The defendant is entitled to rely on the

26  fact, as to which there can be no dispute, that peremptory challenges constitute a jury selection

1 practice that permits 'those to discriminate who are of a mind to discriminate.'" Id. at 169

2 (quoting Avery v. Georgia, 345 U.S. 559, 562 (1953).  In considering the merits of petitioners'

3 claims, this court must consider the "totality of the relevant facts" and "all relevant

4 circumstances" surrounding the prosecutor's use of a peremptory strike,  Batson, 476 U.S. at 94,

5 96, and must analyze the context in which the peremptory strike arose.  Johnson, 545 U.S. at 173.

6 See also Boyd, 467 F.3d at 1146-47.  However, "a defendant can make a prima facie showing

7 based on statistical disparities alone."  Paulino, 371 F.3d at 1091.

8      All three elements of the test for determining whether a prima facie case has been

9 made are met in this case because three of the prosecution's peremptory challenges were

10 exercised against the only three African-Americans in the jury pool.  The issue presented is

11 whether the trial court erred in failing to find an inference that striking these prospective jurors

12 was motivated by race.

13      In Johnson v. California, the United States Supreme Court discussed the level of

14 proof necessary to establish a prima facie case under Batson.[1]  Johnson, 545 U.S. at 168.  In

15 Johnson, as in this case, the prosecutor used three of his peremptory challenges to eliminate the

16 only African-American prospective jurors from the jury pool.  Id. at 164.  The defense raised a

17 Batson challenge after each strike against black jurors.  Id.  The trial judge ruled after each

18 challenge that the defense had not established a prima facie case of racial bias, concluding from

19 his own observations that the prosecutor's strikes could be justified by race-neutral reasons.  The

20 Supreme Court reversed, explaining that:

21         We did not intend the first step to be so onerous that a defendant
        would have to persuade the judge – on the basis of all the facts,

22         some of which are impossible for the defendant to know with
        certainty – that the challenge was more likely than not the product

23         of purposeful discrimination.  Instead, a defendant satisfies the

24

25    [1]  In Batson, the Supreme Court held that because the petitioner had timely objected to the prosecutor's striking of "all black persons on the venire," the trial court erred when it "flatly rejected the objection without requiring the prosecutor to give an explanation for his action."  Id.,

26 476 U.S. at 100.

1    requirements of Batson's first step by producing evidence
     sufficient to permit the trial judge to draw an inference that
2    discrimination has occurred.

3    Id. at 170.  In Johnson, the court concluded that two "inferences of discrimination" present in that

4    case were sufficient to establish a prima facie case under Batson:  the fact that the trial judge

5    pronounced the issue "very close," and the fact that "all three African-American prospective

6    jurors were removed from the jury."  545 U.S. at 173.[2]

7           In the instant case, as in Johnson, petitioner's trial counsel objected each time the

8    prosecution challenged a member of the cognizable group and argued he had established a prima

9    facie case of discrimination: (1) Mr. J and petitioner were both members of the same cognizable

10   group and there was no nondiscriminatory reason for Mr. J to be excused; (2) Once Mr. G was

11   challenged, trial counsel noted the prosecution had now challenged two members of the same

12   cognizable group, but offered no additional circumstance suggesting a basis in invidious group

13   bias; and (3)  when the prosecutor challenged Mr. T, trial counsel noted that the only three

14   members of the cognizable group were now off the jury as a result of the prosecution's

15   peremptory challenges.  Moreover, trial counsel argued that because Mr. T was a former military

16   policeman, he was pro-prosecution if anything, and thus there must be a basis in invidious group

17   bias for removing Mr. T from the jury.  Despite these three objections, the trial court made no

18   effort to seek the prosecution's actual reasons behind the peremptory challenges, opting instead

19   to

20   /////

21

22      [2]  In Miller-El v. Dretke, 545 U.S. 231 (2005), the Supreme Court conducted a
     comparative analysis of seated jurors with excused jurors to determine whether the prosecutor's
23   stated reasons for excusing an African-American juror were pretextual (the third stage of the
     Batson analysis).  Respondent argues that Johnson and Miller-El may not be retroactively applied
24   to this case.  (Answer at 19.)  However, in Boyd, the Ninth Circuit Court of Appeals rejected the
     state's argument that Miller-El was not retroactive, concluding that Johnson and Miller-El merely
25   clarified Batson and did not establish any new rules of criminal procedure.  Boyd, 467 F.3d at
     1145-46.  See also Williams v. Runnels, 432 F.3d 1102, 1105 n.5 (9th Cir. 2006) (reaching same
26   conclusion).  In light of these decisions, this court rejects respondent's argument in this regard
     and will consider the holdings of Johnson and Miller-El in deciding petitioner's Batson claim.

4

1 speculate as to the reasons for each challenge, and finding no prima facie case had been

2 established.

3          In this case, as in <u>Johnson</u>, the prosecutor excused all of the African-American

4 prospective jurors from the jury pool.  "Happenstance is unlikely to produce this disparity."

5 <u>Miller-El</u>, 545 U.S. at 241 (prosecutor used peremptory strikes to exclude 91% of eligible

6 African-American jurors).  This court concludes that the statistical disparity alone gives rise to an

7 inference of racial bias in jury selection.  See <u>Williams</u>, 432 F.3d at 1107 (defendant established

8 an inference of racial discrimination under <u>Batson</u> based on statistical analysis alone, where

9 defendant was African-American, the prosecutor used three of his first four peremptory

10 challenges to remove African-Americans from the jury panel and only four of the first forty-nine

11 potential jurors were African-American); <u>Paulino</u>, 371 F.3d at 1091 (inference of bias where

12 prosecutor used five out of six peremptory challenges to strike African-Americans; case

13 remanded for prosecution to provide race-neutral reasons for the exclusion of these jurors);

14 <u>Fernandez v. Roe</u>, 286 F.3d 1073, 1077-80 (9th Cir. 2002) (inference of bias where four out of

15 seven Hispanics and two blacks were excused by the prosecutor); <u>Turner v. Marshall</u>, 63 F.3d

16 807, 812 (9th Cir. 1995) (<u>overruled on other grounds by</u> <u>Tolbert v. Page</u>, 182 F.3d 677, 681 (9th

17 Cir. 1999) (en banc), (prima facie showing where prosecutor challenged five out of a possible

18 nine African-American jurors).

19          The California Court of Appeal discussed all of the reasons the prosecutor might

20 have dismissed the jurors based on answers during voir dire.  However, judicial speculation as to

21 the reasons for a prosecutor's peremptory challenge are irrelevant.  The <u>Batson</u> framework "is

22 designed to produce actual answers to suspicions and inferences that discrimination may have

23 infected the jury selection process." <u>Johnson</u>, 545 U.S. at 172.  "The inherent uncertainty present

24 in inquiries of discriminatory purpose counsels against engaging in needless and imperfect

25 speculation when a direct answer can be obtained by asking a simple question." <u>Id.</u> See <u>Paulino</u>

26 <u>v. Castro</u>, 371 F.3d 1083, 1090 (9th Cir. 2004) ("[I]t does not matter that the prosecutor might

1  have had good reasons . . . [w]hat matters is the real reason they were stricken"); <u>Holloway v.</u>

2  <u>Horn</u>, 355 F.3d 707, 725 (3rd Cir. 2004) (speculation "does not aid our inquiry into the reasons

3  the prosecutor actually harbored" for a peremptory strike).

4         Here, petitioners produced evidence sufficient to permit the trial judge to draw an

5  inference that the prosecutor struck all African American potential jurors from the venire.  <u>See</u>

6  <u>Johnson</u>, 545 U.S. at 170.

7         Because petitioners have demonstrated that the facts give rise to an inference of

8  discriminatory purpose, making a prima facie case, the burden shifts to the state to explain the

9  racial exclusion by offering permissible race-neutral justifications for the strikes.  The trial court

10  did not require the prosecutor to explain his peremptory challenges, relying instead on its own

11  speculation as to what might have been the prosecutor's reasons.  No evidentiary hearing was

12  held below, so the state has never been required to present evidence of the prosecutor's actual,

13  non-discriminatory reasons for striking the three black jurors.  Therefore, an evidentiary hearing

14  is required so the state will have an opportunity to present evidence as to the prosecutor's

15  race-neutral reasons for the apparently-biased pattern of peremptories, and determine whether the

16  prosecutor violated <u>Batson</u>.  <u>Paulino</u>, at 1092 citing <u>Batson</u>, 476 U.S. at 100; <u>Turner</u>, 63 F.3d at

17  814.

18         For the foregoing reason, IT IS HEREBY ORDERED that:

19         1.  Petitioner's request for an evidentiary hearing is granted; and

20         2.  This matter is set for evidentiary hearing on Wednesday, October 24, 2007, at

21  10:00 a.m. before the undersigned in Courtroom #26.

22  DATED:  August 15, 2007.

23

24  UNITED STATES MAGISTRATE JUDGE

25

26  /001;john2063.evi